UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

EASTERN DIVISION

| | | |
|---|---|---|
| KYOKO M. H.,[1] | ) | Case No. 5:25-cv-01003-JDE |
| | ) | |
| Plaintiff, | ) | MEMORANDUM OPINION AND |
| | ) | ORDER |
| v. | ) | |
| | ) | |
| FRANK BISIGNANO,[2] | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

On April 23, 2025, Plaintiff Kyoko H. ("Plaintiff") filed a Complaint seeking review of the denial of her application for supplemental security income ("SSI"). The Court has reviewed Plaintiff's opening brief (Dkt. 13) the Commissioner's answering brief (Dkt. 20), Plaintiff's reply brief (Dkt. 21), and the Administrative Record (Dkt. 12, "AR"). The matter is now ready for decision.

---

[1] Plaintiff's name has been partially redacted in accordance with Fed. R. Civ. P. 5.2(c)(2)(B) and the recommendation of the Committee on Court Administration and Case Management of the Judicial Conference of the United States.

[2] Frank Bisignano, Commissioner of the Social Security Administration, is substituted as defendant. See Fed. R. Civ. P. 25(d).

## I.

## BACKGROUND

Plaintiff filed an application for SSI on January 9, 2022, alleging disability commencing on March 1, 2014. AR 31. After the application was denied initially and on reconsideration (AR 140-49, 176-82), an Administrative Law Judge ("ALJ") held a hearing on March 6, 2024, at which Plaintiff, represented by counsel, and a vocational expert testified. AR 31, 49-81.

On May 7, 2024, the ALJ concluded Plaintiff was not disabled. AR 31-42. The ALJ found Plaintiff had not engaged in substantial gainful activity since January 9, 2022, the application date, and found Plaintiff suffered from severe impairments of degenerative disc disease of the cervical and lumbar spine and rheumatoid arthritis. AR 33 Id. The ALJ assessed that Plaintiff did not have an impairment or combination of impairments meeting a listed impairment and next determined Plaintiff had the residual functional capacity ("RFC") to perform light work,[3] with the following limitations:

> [T]he climbing of ramps and stairs must be limited to occasionally, while the climbing of ladders, ropes, and scaffolds must be entirely precluded from work duties as assigned and balancing, stooping (bending at the waist), kneeling, crouching (bending at the knees), and crawling must be limited to occasionally. Additionally, with the bilateral upper extremities, manipulation fine (fingering) must be limited to frequently not constantly. Finally, within the

---

[3] "Light work" is defined as: "lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, [a claimant] must have the ability to do substantially all of these activities. 20 C.F.R. § 416.967(b); see also Aide R. v. Saul, 2020 WL 7773896, *2 n.6 (C.D. Cal. Dec. 30, 2020).

assigned work setting, there must be no concentrated exposure to extreme cold or heat and workplace hazards, such as unprotected heights and dangerous moving machinery must be entirely precluded from the assigned work setting.

AR 35. The ALJ next found Plaintiff had no past relevant work, but based on her age, education, work experience, RFC, and the testimony of the vocational expert, jobs existed in significant numbers in the national economy that she could perform, including the representative occupations of marker, routing clerk, and order caller. AR 40. The Appeals Council denied Plaintiff's request for review, making the ALJ's decision the agency's final decision. AR 1-6.

## II.

## LEGAL STANDARD

**A.    Standard of Review**

Under 42 U.S.C. § 405(g), this Court may review a decision to deny benefits. The ALJ's findings and decision should be upheld if they are free from legal error and supported by substantial evidence based on the record as a whole. Brown-Hunter v. Colvin, 806 F.3d 487, 492 (9th Cir. 2015) (as amended); Parra v. Astrue, 481 F.3d 742, 746 (9th Cir. 2007). Substantial evidence means such relevant evidence as a reasonable person might accept as adequate to support a conclusion. Lingenfelter v. Astrue, 504 F.3d 1028, 1035 (9th Cir. 2007). It is more than a scintilla, but less than a preponderance. Id. To assess whether substantial evidence supports a finding, the court "must review the administrative record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion." Reddick v. Chater, 157 F.3d 715, 720 (9th Cir. 1998). "If the evidence can reasonably support either affirming or reversing," the reviewing court "may not substitute its judgment" for that of the Commissioner. Id. at 720-21; see also Molina v. Astrue, 674 F.3d 1104, 1111 (9th Cir. 2012) ("Even when the

evidence is susceptible to more than one rational interpretation, [the court] must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record."), superseded by regulation on other grounds as stated in Smith v. Kijakazi, 14 F.4th 1108, 1111 (9th Cir. 2021). Lastly, even if an ALJ errs, the decision will be affirmed if the error is harmless (Molina, 674 F.3d at 1115), that is, if it is "inconsequential to the ultimate nondisability determination," or if "the agency's path may reasonably be discerned, even if the agency explains its decision with less than ideal clarity." Brown-Hunter, 806 F.3d at 492 (citation omitted); Smith, 14 F.4th at 1111 (even where the "modest burden" of the substantial evidence standard is not met, "we will not reverse an ALJ's decision where the error was harmless").

**B.    The Five-Step Sequential Evaluation**

When a claim reaches an ALJ, the ALJ conducts a five-step sequential evaluation to determine at each step if the claimant is disabled. See Ford v. Saul, 950 F.3d 1141, 1148-49 (9th Cir. 2020); Molina, 674 F.3d at 1110.

First, the ALJ considers if the claimant currently works at a job that meets the criteria for "substantial gainful activity." Molina, 674 F.3d at 1110. If not, the ALJ proceeds to a second step to determine whether the claimant has a "severe" medically determinable physical or mental impairment or combination of impairments that has lasted for more than twelve months. Id. If so, the ALJ proceeds to a third step to assess whether the claimant's impairments render the claimant disabled because they meet or equal any of the listed impairments in the Social Security Regulations at 20 C.F.R. Part 404, Subpart P, Appendix 1. See Rounds v. Comm'r Soc. Sec. Admin., 807 F.3d 996, 1001 (9th Cir. 2015). If the claimant's impairments do not meet or equal a "listed impairment," before proceeding to the fourth step the ALJ assesses the claimant's RFC, that is, what the claimant can do on a sustained basis despite the limitations from her impairments. See 20 C.F.R. § 416.920(a)(4); Social Security Ruling ("SSR")

4

96-8p, 1996 WL 374184 (July 2, 1996). After assessing the RFC, the ALJ proceeds to the fourth step to determine if, in light of the claimant's RFC, the claimant can perform past relevant work as actually or generally performed. See Stacy v. Colvin, 825 F.3d 563, 569 (9th Cir. 2016). If the claimant cannot perform past relevant work, the ALJ proceeds to a fifth and final step to determine whether there is any other work, in light of the claimant's RFC, age, education, and work experience, that the claimant can perform and that exists in "significant numbers" in either the national or regional economies. See Tackett v. Apfel, 180 F.3d 1094, 1100-01 (9th Cir. 1999); 20 C.F.R. § 416.966(a). A claimant who can do other work is not disabled; a claimant who cannot do other work and meets the duration requirement is disabled. See Tackett, 180 F.3d at 1099; see also Woods v. Kijakazi, 32 F.4th 785, 788 n.1 (9th Cir. 2022) (summarizing the steps and noting that "[t]he recent [2017] changes to the Social Security regulations did not affect the familiar 'five-step sequential evaluation process.'").

The claimant generally bears the burden at steps one through four to show she is disabled or meets the requirements to proceed to the next step and bears the ultimate burden to show he is disabled. See, e.g., Ford, 950 F.3d at 1148; Molina, 674 F.3d at 1110; Johnson v. Shalala, 60 F.3d 1428, 1432 (9th Cir. 1995). However, at step Five, the ALJ has a limited burden of production to identify representative jobs that the claimant can perform and that exist in "significant" numbers in the economy. See Hill v. Astrue, 698 F.3d 1153, 1161 (9th Cir. 2012); Tackett, 180 F.3d at 1100.

## III.

## DISCUSSION

Plaintiff raises three issues:

Issue No. 1: Whether the ALJ erred in failing to find Plaintiff's foot impairments and obesity severe impairments. Dkt. 13 at 2, 14.

5

Issue No. 2: Whether the ALJ provided clear and convincing reasons to reject Plaintiff's subjective symptom testimony. Dkt. 13 at 4.

Issue No. 3: Whether the ALJ properly evaluated the medical opinion of Dr. Talaat Maximous. Dkt. 13 at 11.

**A. The ALJ Did Not Err at Step Two**

Plaintiff contends the ALJ erred in failing to properly consider her foot impairments and obesity when determining her severe impairments at step two. Dkt. 13 at 2, 14.

1. Applicable Law

At step two of the five-step sequential analysis, the ALJ considers whether a claimant suffers from a "severe" impairment, or combination of impairments. See 20 C.F.R. §§ 404.1520, 416.920. If an impairment, or a combination of impairments, significantly limits the claimant's ability to perform a basic work activity and has lasted, or is expected to last, for at least a year continuously, those impairments are considered "severe." 20 C.F.R. §§ 404.1520, 416.920. In practice, step two functions as a screening mechanism to eliminate cases where the alleged disabilities result in impairments so slight that there is no interference with the claimant's ability to work. See Bowen v. Yuckert, 482 U.S. 137, 154 (1987). If the ALJ erroneously determines that an alleged impairment is not "severe," a reviewing court must assess whether the error was harmless. See Lewis v. Astrue, 498 F.3d 909, 911 (9th Cir. 2007); see also Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005) ("A decision of the ALJ will not be reversed for errors that are harmless.").

2. Analysis

At step two, the ALJ found Plaintiff had severe impairments of degenerative disc disease of the cervical and lumbar spine and rheumatoid arthritis. AR 33. Plaintiff argues that the medical evidence shows that her foot impairments, namely bilateral calcaneal spurs, ples planus (collapsed arches),

and hallux valgus (bunions) are severe impairments. Dkt. 13 at 6. She further contends that her obesity should have been considered severe. Dkt. 13 at 2.

Assuming without deciding that the ALJ erred in not finding additional impairments to be severe, any such error was harmless. As noted, the ALJ resolved step two in Plaintiff's favor, i.e., the ALJ found Plaintiff's claim survived the "gatekeeping" step designed to dispose of groundless claims by finding other impairments to be severe. The ALJ did not terminate the evaluation at step two; rather, she continued the analysis through the final steps of the disability determination. See Hoopai v. Astrue, 499 F.3d 1071, 1076 (9th Cir. 2007) (the step two finding is "merely a threshold determination" that "only raises a prima facie case of a disability"); Burch, 400 F.3d at 682 (concluding that any error ALJ committed at step two was harmless where the step was resolved in claimant's favor); Kemp v. Berryhill, 2017 WL 3981195, at *5 (C.D. Cal. Sept. 8, 2017) (any error in declining to find mental impairments severe harmless because step two is the "gatekeeping" step, and the ALJ continued the analysis).

Moreover, the ALJ considered Plaintiff's foot-related issues and obesity in assessing her limitations. As to foot-related issues, the ALJ noted that "X-rays of the foot revealed an unchanged 4mm planta calcaneal heal spur" and "ongoing complaints of pain," but the ALJ also considered that Plaintiff "continued to report use of treadmill four times weekly," "largely mild findings on objective imaging," "independent completion of personal care, and reports of completing all household chores" were, taken together, "support of the limitations provided for in the [RFC] . . . and the "evidence is as well inconsistent with the need for any more restrictive limitations." AR 38. As for obesity, the ALJ, after noting "no evidence of a treating or examining medical source specifically attribut[ing] additional or cumulative limitations to obesity," stated she "fully considered the effects of obesity and [that is]

7

reflected in the [RFC.]" AR 34. Accordingly, any error in declining to find foot issues or obesity to be severe impairments at step 2 was harmless because the ALJ considered those issues at the remaining steps and in formulating the RFC. See Hurter v. Astrue, 465 F. App'x 648, 652 (9th Cir. 2012) (error harmless where ALJ, while not explicitly considering certain impairments, stated all symptoms were considered in formulating RFC).

### B. The ALJ Did Not Err in Evaluating Plaintiff's Testimony

#### 1. Applicable Law

When a disability claimant produces objective medical evidence of an impairment that could reasonably be expected to produce the pain or other symptoms alleged, absent evidence of malingering, the ALJ must provide "specific, clear and convincing reasons for rejecting the claimant's testimony regarding the severity of the claimant's symptoms." Treichler v. Comm'r of Soc. Sec. Admin., 775 F.3d 1090, 1102 (9th Cir. 2014) (citation and internal quotations omitted); Moisa v. Barnhart, 367 F.3d 882, 885 (9th Cir. 2004); see also 20 C.F.R. § 416.929(a). "The standard isn't whether [the federal] court is convinced, but instead whether the ALJ's rationale is clear enough that it has the power to convince." Smartt v. Kijakazi, 53 F.4th 489, 500 (9th Cir. 2022). "This standard is 'the most demanding required in Social Security cases.'" Smith, 14 F.4th at 1112 (quoting Moore v. Comm'r of Soc. Sec. Admin., 278 F.3d 920, 924 (9th Cir. 2002)); see also Garrison v. Colvin, 759 F.3d 995, 1015 (9th Cir. 2014) ("This [standard] is not an easy requirement to meet.").

The ALJ's findings "must be sufficiently specific to allow a reviewing court to conclude the [ALJ] rejected [the] claimant's testimony on permissible grounds and did not arbitrarily discredit the claimant's testimony." Moisa, 367 F.3d at 885 (citation and internal quotations omitted). "General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." Reddick, 157 F.3d at

722 (citation and internal quotations omitted). But, if the ALJ's assessment of the testimony is reasonable and is supported by substantial evidence, it is not the court's role to "second-guess" it. Smartt, 53 F.4th at 500 (citing Rollins v. Massanari, 261 F.3d 853, 857 (9th Cir. 2001)). The ALJ's finding may be upheld even if not all the reasons for rejecting the testimony are upheld. See Batson v. Comm'r of Soc. Sec. Admin., 359 F.3d 1190, 1197 (9th Cir. 2004).

### 2.  Plaintiff's Testimony

Plaintiff testified at the administrative hearing and completed a "Function Report" (AR 333-45) which are summarized as follows.

Plaintiff reported being unable to walk, stand, bend, or sit for a long period of time, and she cannot lift or carry heavy objects. AR 58-59, 338, 343. She has pain in her stomach, head, right index finger, toe, shoulders, wrists, and lower back, worsened by constant moving. AR 58-60. The pain does not "get any better," but medication it "dulls the pain out." AR 61. She does not take her medication like she is "supposed to in order to keep the pain from coming back[.]" Id. She takes supplements which work "a little," but do not completely take the pain away. Id. She stated that massage helped to take her pain away, but only for the duration of the massage. AR 62-63.

Plaintiff takes Tramadol, Gabapentin, Methotrexate, Morphine, Propranolol, Tylenol, and Inderal. AR 62, 345. At one point, she had braces for her feet and pain injections for her feet and back. AR 63, 344. Plaintiff stated that her normal pain levels run at about an eight out of ten, but if she were to take her medication as prescribed, they would drop to a five out of ten. AR 70. Plaintiff expressed general concerns with her medications being opiates and having side effects, stating "maybe it's just in my head, but I feel like if I take it all the time . . . it's going to cause another issue." AR 74.

An average day for Plaintiff involves doing basic housework such as sweeping, dishes, vacuuming, mopping, cleaning the bathroom, laundry, and

going to the store as needed. AR 64, 339-40. She cooks for her teenage daughter that lives with her. AR 64-65, 339-40. She cleans up after and feeds her two cats. AR 65-66, 339. She can bathe and attend to her personal hygiene. AR 64. She watches TV and uses social media. AR 65, 342. She can walk for thirty minutes. AR 66-67.

### 3. Analysis

As an initial matter, of note, the ALJ did not completely reject Plaintiff's subjective symptom testimony. Rather, the ALJ incorporated some limitations, including the exertion restriction to light work, as well as additional restrictions, including among others, a limitation in the RFC that Plaintiff "must be entirely precluded from work duties as assigned and balancing, stooping (bending at the waist), kneeling, crouching (bending at the knees)." AR 35, 38.

As to the partial rejection of Plaintiff's testimony, the ALJ found that as to extent of her reported pain and physical limitations was "inconsistent [with] the longitudinal evidence in this record." AR 36. In support of that finding, among other things, the ALJ referenced reports of two consultative examinations in 2022 and 2023, at which Plaintiff reported pain, but at which physical examinations revealed "no acute distress, with normal gait with no signs of either a limp or analgias," movement "without difficulty," "no tenderness to palpation of the lumbar spine and range of motion . . . grossly within normal limits," and showed Plaintiff "was able to rise from sitting and supine position without difficulty," with normal results for wrists, elbows, and hands, and knees with a normal range of motion, and intact sensation and reflexes. AR 37. Although an ALJ may not "reject a claimant's subjective complaints based solely on a lack of medical evidence to fully corroborate the alleged severity of pain," Burch, 400 F.3d at 680, "when objective medical evidence in the record is inconsistent with the claimant's subjective testimony, the ALJ may indeed weigh it as undercutting such testimony." Smartt, 53 F.4th

at 498 (emphasis in original). Here, as in Smartt, the ALJ "show[ed her] work" by "highlight[ing] several inconsistencies between [plaintiff's] subjective symptom testimony and the objective medical evidence in the record." 53 F.4th at 498-99; see AR 36-38 (summarizing inconsistencies between Plaintiff's testimony and the medical evidence).

Plaintiff claims the objective evidence, including imaging and physical examinations, is consistent with her testimony, arguing all such studies, including MRI scans, nerve conduction studies, and physical examinations, yielded "abnormal results." Dkt. 13 at 6-7. Preliminarily, several of the diagnostic studies cited by Plaintiff facially corroborate the ALJ's finding of mild to moderate findings. Dkt. 13 at 7; AR 38. As to the remaining studies which Plaintiff argues support her testimony, though Plaintiff proffers a different interpretation of the record, the ALJ has also provided a rational interpretation. As the Ninth Circuit has held, "[w]e must uphold the ALJ's decision where the evidence is susceptible to more than one rational interpretation." Magallanes v. Bowen, 881 F.2d 747, 750 (9th Cir. 1989); see also Smartt, 53 F.4th at 500 ("It is not the court's role to 'second-guess' an ALJ's reasonable interpretation of a claimant's testimony.").

Next, the ALJ found Plaintiff's description of her daily activities to be inconsistent with her claims of disabling limitations. AR 36, 38. In particular, the ALJ noted that Plaintiff used the treadmill four times a week, completed all chores in her household, and was independent in all personal care. AR 38, 340. The ALJ found these activities were inconsistent with Plaintiff's testimony of disabling symptoms. AR 38. The ALJ properly relied upon these activities in assessing Plaintiff's subjective allegations. See Kaufmann v. Kijakazi, 32 F.4th 843, 851 (9th Cir. 2022) ("[c]laimant's testimony about the extent of her limitations conflicted with the evidence of her daily activities, such as sewing, crocheting, and vacationing, and support[ed] the ALJ's finding that [c]laimant's

testimony was not fully credible"); <u>Ghanim v. Colvin</u>, 763 F.3d 1154, 1165 (9th Cir. 2014) ("Engaging in daily activities that are incompatible with the severity of symptoms alleged can support an adverse credibility determination."); <u>Waltrip v. Berryhill</u>, 2018 WL 4488467, at *6 (E.D. Cal. Sept. 19, 2018) (claimant's daily activities were inconsistent with complaints of disabling symptoms and limitations, including his ability to care for his elderly mother, perform personal care, prepare meals, complete household chores, perform yard work, drive, shop, and manage funds, among other activities), <u>aff'd sub nom.</u> <u>Waltrip v. Saul</u>, 843 F. App'x 962 (9th Cir. 2021).

Plaintiff argues that the ALJ took Plaintiff's testimony about her daily activities "out of context." Dkt. 21 at 4. The Court sets out portions of such testimony within a greater context:

Q Tell me what you do every day.

A Every day, I just do the basic housework, you know, sweep, you know, I'll clean the dishes or vacuum my floor, mop, clean the bathroom, laundry, back and forth to the store when I need to. I haven't really been cooking that much lately. That's really it. But even when I sweep the floor, you know, I'll feel a little pinch in my back and it's real not even that often. Like, I real only sweep when my floor, you know, gets really dirty. But it's just -- it's basically just me and my daughter here, so I pretty much do everything.

Q Are you able to take a shower or bath and attend to your personal hygiene?

A Yeah. Yeah, but even like bending over, you know, in the shower, I guess to shave a little bit or whatever, it still -- it puts a little bit of a strain on my back. My back and my hips are my main -- are the main issue, the main thing that hurts the worst. Like, everything hurts, but my back and my hips is what's really the problem. . . .

Q Okay. Do you cook?

A Yes. I've not -- I haven't, I haven't lately, you know, or as much as I do, but yeah, I do cook.

Q Do you shop?

A Yes.

. . .

Q How long can you walk?

A Thirty. Like I said, I used to walk back and forth to Rite Aid, which is 30 minutes away. So, making it there is fine. It's 30 minutes to get there, but walking back is where the problem - is when I have to stop. So, I'll say 30 minutes.

Q How much weight can you lift?

A I'll say ten pounds.

Q How much weight can you carry?

A Probably the, probably the same, the same amount. Like, if I have to if I'm just carrying something from, say -- you know, from outside to inside, that's fine. I can do that. But if I have to be lifting constantly up and down, up and down, up and down, lifting ten pounds, I won't be able to do it.

AR 64-67. The ALJ fairly summarized Plaintiff's testimony.

The Court finds ALJ properly found Plaintiff's testimony regarding her daily activities was inconsistent with the extent of her claimed limitations and properly partially discounted that symptom testimony on that basis.

With respect to the ALJ's proffered reason to partially discredit Plaintiff's testimony based on conservative treatment, as the Court finds above that the ALJ provided other specific, clear, and convincing reasons for doing so, the Court does not reach the issue, as even where the reason not a proper basis to

13

discredit Plaintiff's testimony, any such error would be harmless. See Reyes v. Berryhill, 716 F. App'x 714, 714 (9th Cir. 2018) (where ALJ provided valid reasons for discounting claimant's testimony, "[a]ny error in other reasons provided by the ALJ was harmless"); Batson, 359 F.3d at 1197; Williams v. Comm'r, Soc. Sec. Admin., 2018 WL 1709505, *3 (D. Or. Apr. 9, 2018) ("Because the ALJ is only required to provide a single valid reason for rejecting a claimant's pain complaints, any one of the ALJ's reasons would be sufficient to affirm the overall . . . determination.").

The ALJ provided sufficiently clear and convincing reasons, supported by substantial evidence, for partially discounting Plaintiff's symptom testimony.

**C. The ALJ Did Not Err in Assessing Dr. Maximous's Medical Opinion**

1. Applicable Law

The ALJ evaluates the persuasiveness of medical opinions based on several factors: (1) supportability; (2) consistency; (3) relationship with the claimant (including the length of treatment, frequency of examinations, purpose of treatment, extent of treatment, whether the medical source examined the claimant); (4) the medical source's specialty; and (5) "other" factors. See 20 C.F.R. § 416.920c(c)(1)-(5).

Supportability and consistency are the most important factors, and the ALJ is required to explain how both factors were considered. 20 C.F.R. § 416.920c(b)(2); see also Woods, 32 F.4th at 792. Supportability and consistency are explained in the regulations as follows:

(1) Supportability. The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be.

14

(2) Consistency. The more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative finding(s) will be.

20 C.F.R. § 416.920c(c)(1)-(2). The ALJ may, but is not required to, explain how "the factors in paragraphs (c)(3) through (c)(5)," i.e. "[r]elationship with the claimant," "[s]pecialization," and "other factors that tend to support or contradict a medical opinion or prior administrative medical finding," were considered. 20 C.F.R. § 416.920c(b)(2); see also Woods, 32 F.4th at 790, 792.

### 2. Analysis

The ALJ summarized and analyzed opinions of Dr. Maximous issued after two physical examinations he conducted of Plaintiff in July 2022 and February 2023 and found those opinions to be partially persuasive. Id. Her analysis of Dr. Maximous's two opinions is as follows (AR 39):

> I considered the opinion of consultative examiner Talaat Maximous, MD from July 2022. [Citation.] Dr. Maximous determined the claimant would be able to perform work at the light exertional level and would be able to push and pull occasionally, stand and walk four hours, sit six hours, occasionally climb, balance, knee, crawl, walk on uneven terrain, climb ladders, and work at heights but would have to avoid working with heavy moving machinery. I find this opinion partially persuasive initially I note the opinion is internally inconsistent and the opinion lack substantial support from the medical source who offered the opinion. Upon review, I find the CE examiner's opinion is likely an overestimate of the severity of impairments, this is reflected as

15

well in their recommended restrictions and limitations. Dr. Maximous relied heavily on the claimant's subjective report of pain and symptoms and the limitations the claimant reported as resulting from these. However, the totality of the evidence does not support this doctor's opinion. Specifically, physical examinations performed throughout the period are largely unremarkable or at most noting only some mild findings and the same is true of objective imaging, which generally reflects only mild to moderate abnormalities. [Citations.]

Similarly, I considered Dr. Maximous' opinion from February 2023. [Citation.] After the consultative examination, Dr. Maximous determined the claimant would be able to perform light work, push and pull occasionally, stand and walk four hours, sit six hours, occasionally climb, balance, knee, crawl, walk on uneven terrain, climb ladders, and work at heights but must avoid work with heavy moving machinery due to back pain and cold weather, and wet or humid environments due to arthritis. I find this opinion only partially persuasive. This opinion is not consistent and is without substantial support from the medical source who offered the opinion. The CE examiner's opinion is an overestimate of the severity of the claimant's restrictions and limitations and it apparently relied heavily on the subjective reports of symptoms and limitations provided by the claimant and the totality of the evidence simple does not support the opinion. Specifically, physical examinations performed throughout the period are largely unremarkable or reflect only mild findings and the objective imaging also revealed only mild to moderate abnormalities. [Citations.]

The ALJ did not err in assessing Dr. Maximous's opinions. As set forth above, the ALJ found the opinions, variously, "not consistent with" the medical evidence, "lack[ing] substantial support," and not supported by "the totality of evidence," citing specifically to reports of physical examinations and "objective imaging" that are "largely unremarkable," generally reflecting "only mild to moderate" abnormalities.[4] AR at 39. Further, the ALJ explained that Dr. Maximous relied heavily on Plaintiff's subjective reports, but, as the ALJ found, such reports were inconsistent with the medical evidence. AR 39. In support of these findings, the ALJ cited to the medical record. See generally AR 39. The ALJ's explanation as to how she considered the persuasiveness of Dr. Maximous's opinions, with specific findings regarding inconsistency and lack of supportability, supported by substantial evidence, is sufficient to sustain the ALJ's partial rejection of those opinions.

## IV.

## ORDER

IT THEREFORE IS ORDERED that Judgment be entered affirming the decision of the Commissioner and dismissing this action with prejudice.

Dated: January 20, 2026

_____
JOHN D. EARLY
United States Magistrate Judge

---

[4] Plaintiff fairly faults the ALJ's characterization of the first opinion as "internally inconsistent" without explaining such internal inconsistency. Dkt 13 at 12 (citing AR 39). The Court does not rely on the ALJ's "internally inconsistent" characterization in making its findings above.

17